

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00183-CR

PAUL MICHAEL DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 35289CR

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

After a bench trial, Paul Michael Davis was found guilty of manufacture or delivery of a controlled substance, four grams or more but less than 200 grams, a first-degree felony.[1]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(d), 481.102(3)(D) (Supp.).  In his sole issue on appeal, Davis alleges that the evidence was legally insufficient to support his conviction, either as a principal actor or a party.  Because we find the evidence legally sufficient, we affirm the trial court's judgment.

## I. Standard of Review

"The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence."  *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)).  "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt."  *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks*, 323 S.W.3d at 912).  "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

---

[1]In his companion appellate cause number 06-25-00184-CR, Davis challenges his conviction for manufacture or delivery of a controlled substance.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.113(d) (Supp.).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Even erroneously admitted evidence must be considered when addressing a challenge to the sufficiency of the evidence." *Moore v. State*, 169 S.W.3d 467, 477 (Tex. App.—Texarkana 2005, pet. ref'd); *see Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson*, 589 S.W.3d at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct jury charge for possession of a controlled substance with intent to deliver states, "[A] person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance," TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Supp.), between "four grams or more but less than 200 grams," TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). The State must prove Davis intentionally or knowingly possessed a controlled substance with an intent to deliver it to others.

3

## II.  Evidence at Trial

David Wilson, a special crimes sergeant and investigator with the Hunt County Sheriff's Office (HCSO) special crimes division, focused on narcotics cases for the HCSO. In August 2024, a confidential informant (CI) gave Wilson information regarding possible narcotics distribution from the home of Davis, his brother Samuel Davis, and Edward Glass. The information led to surveillance on the residence, which indicated "telltale sign[s] of narcotics traffic." The CI was then used to go to the residence and purchase illegal narcotics, namely methamphetamine and GHB, from Samuel. Subsequently, as part of another investigation, Samuel was arrested for "a large amount of methamphetamine[]." While in jail, Samuel called Davis on a recorded line, which Wilson obtained and listened to. During the phone call, Samuel indicated that there were "items that the officer missed during the initial search" of his vehicle when he was arrested, specifically referring to two drink bottles containing the liquid form of GHB, which is a clear liquid that can look like water to the untrained eye.

After listening to the recorded call between Davis and Samuel, a warrant was obtained to search Davis and Samuel's residence. The search included Davis's bedroom, in which officers located two plastic bottles containing liquid, both of which were tested by the Texas Department of Public Safety (DPS); one bottle contained GHB, the other contained "1,4-Butanediol." In addition to unidentified substances, the officers also located cocaine in Davis's bedroom. A digital scale was also located, though it was "king of covered up by" "letter[s] and mail and junk." Wilson testified that in his experience, the kind of setups he located in both Davis and Samuel's bedrooms were indicative of the distribution of narcotics.

4

On cross-examination, Wilson noted that there were many more bottles and paraphernalia that indicated that Samuel had a "workstation" in his bedroom. When confronted with the laboratory form, Wilson admitted that the form indicated that the tested bottles were from Samuel's bedroom, but Wilson explained that the form was incorrect because the pictures clearly indicated where they were from.

Davis was not arrested on the day the search warrant was executed, but Samuel was. Once arrested, Samuel said "[t]hose are my drugs" and took ownership of the drugs found in the house. Wilson testified that "ownership" does not matter if the drugs are found in another person's possession.

Christopher Powell, a seized-drug analyst for the DPS Crime Laboratory, testified that he analyzed four different items that were seized from Davis and Samuel's house. One item tested positive for cocaine, with a net weight of 10.36 grams. Two of the tested items contained "1,4-Butanediol," which Powell testified was an analog compound to GHB, which means it is "structurally similar to a controlled substance" present in the Texas Health and Safety Code. The final item tested contained 259.13 grams of GHB. The information that Powell received was the location of where the items were found—which he testified were "suspect's closet" and "suspect's bedroom." There was no indication of the identity of who the "suspect" referred to.

In his own defense, Davis explained that he was living alone in the residence starting around January 2022. Samuel moved in with him a few months later, along with Samuel's girlfriend. Davis was in a motorcycle accident in March 2024, which resulted in serious bodily

injuries. At the time of the search of the residence, Davis was mostly "bedridden." He relied fully on his brother for everything.

Davis explained that Samuel was a heavy drug user and specifically drank GHB straight from the bottle daily. After Samuel was arrested, and prior to the search warrant being executed on their residence, Davis went to retrieve his truck from impound with the help of a friend. He testified that the truck was "destroyed" as though it had been "vandalized" or "robbed." Davis stated that he retrieved Samuel's "satchel" from the truck, containing Samuel's wallet and other items.

When the home was searched, Davis was in the kitchen; he was patted down, and then officers assisted him outside and into a chair. Davis stated that Samuel was arrested after the search, but Davis was not, testifying that Wilson told him that he did not have anything to worry about. Davis testified that he had never manufactured or possessed with the intent to deliver either cocaine or GHB. At the time of the search, he was unaware of how the bottles of GHB and cocaine got placed in his bedroom, and while he knew Samuel used the drugs, he provided no assistance or encouragement.

Davis has a prior criminal history which includes two convictions for possession of a controlled substance, methamphetamine, and one conviction for unauthorized use of a motor vehicle.

On cross-examination, Davis remained steadfast in his testimony that he was unaware of drugs being in his bedroom, and he had never found drugs in there prior to that day. While in the kitchen, he explained that he saw the lights from the police officers and that over a minute or so,

6

the police officers were knocking on the door before they "busted" it open. To Davis's knowledge, Samuel did not indicate that he was aware the police were at the door. When the officers got to the door and were knocking it down, he did not hear Samuel or their guest "running around." Davis explained that after Samuel was arrested, he told Davis that he "panicked" and "chunked" the drugs into Davis's room because he believed the officers were only there for him (Samuel). Samuel told Davis that he "wadded up" the bottles in a jumpsuit and tossed them under Davis's bed. Davis denied ever bringing in any bottles from the truck prior to the search warrant of the residence being executed. Davis did admit that he was aware that Samuel was selling narcotics from their residence, though he "never [saw] a hand-to-hand transaction." While he explained that he had heard Samuel discussing buying large quantities of GHB, he stated that he had never seen illegal narcotics in their home, with the exception of Samuel's personal use of GHB. Samuel never talked about cocaine.

At the close of evidence, and after hearing the argument of counsel, the trial court found Davis guilty of both charges against him. After a punishment hearing, the trial court sentenced Davis to twenty-two years' incarceration.

## III. The Evidence Was Legally Sufficient to Support the Conviction

### A. Applicable Law

In his sole issue, Davis challenges the legal sufficiency of the evidence supporting his conviction. Davis was convicted under Section 481.112(d) of the Texas Health & Safety Code, which provides in pertinent part that an offense under subsection (a) is a first-degree felony if the amount of the controlled substance is "four grams or more but less than 200 grams." *See* TEX.

7

HEALTH & SAFETY CODE ANN. § 481.112(d). Subsection (a) provides that "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). Cocaine is a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D).

"[I]n a possession of a controlled substance prosecution, 'the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband.'" *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (quoting *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)). "Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs." *Id.* However, presence or proximity, when combined with other evidence, either direct or circumstantial . . . , may well be sufficient to establish that element beyond a reasonable doubt." *Id.* "A conviction under the law of parties is appropriate if there is evidence that the defendant was physically present and encouraged the commission of the crime by words or other agreement." *Leadon v. State*, 332 S.W.3d 600, 606 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g)); *see Miller v. State*, 83 S.W.3d 308, 313–14 (Tex. App.—Austin 2002, pet. ref'd). "Circumstantial evidence may suffice to show that one is a party to the offense." *Leadon*, 332 S.W.3d at 606 (citing *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977); *Miller*, 83 S.W.3d at 314).

**B. Discussion**

Here, it is undisputed that Davis lived in and was present at the residence where the drugs and drug paraphernalia were located. The evidence establishes that GHB and cocaine were found in the residence, specifically in Davis's bedroom, as well as digital scales and several cell phones. Wilson testified that there was known narcotic activity at the residence as well as a high volume of traffic coming and going from the residence, which Wilson explained was an indication of drug activity. Further, Wilson explained that there were "workstations" in the residence to indicate the manufacture and intent to sell narcotics.

Davis did not deny knowledge of narcotics sales occurring in the residence but claimed no involvement. The evidence, however, when viewed in the light most favorable to the verdict, establishes that there were two bottles of GHB and cocaine found in Davis's bedroom. While Davis's defense is that Samuel owned the drugs and placed them in Davis's bedroom, the trial court, as fact-finder, was free to disbelieve the self-serving testimony. *See Wallace v. Wallace*, 690 S.W.3d 718, 721 (Tex. App.—San Antonio 2024, no pet.) ("In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony." (quoting *Bolda v. Bolda*, No. 02-18-00307-CV, 2019 WL 6334706, at *7 (Tex. App.—Fort Worth Nov. 27, 2019, no pet.) (mem. op.) (quoting *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.)))). The trial court also had before it a recorded call between Davis and Samuel, while Samuel was incarcerated. While Davis attempted to explain away the comments related to the bottles that were left behind after the

search of the truck, the trial court could have inferred, as a reasonable fact-finder, based on the conversation that Davis, at the very least, assisted Samuel by returning the bottles of GHB to the residence for future sale or distribution.

"Viewing the evidence in the light most favorable to the verdict, and based on the logical force of all the circumstantial and direct evidence, we do not believe that the evidence demonstrates that [Davis's] contact with the cocaine in this case was merely fortuitous." *Alexander v. State*, No. 10-12-00224-CR, 2013 WL 4040121, at *5 (Tex. App.—Waco Aug. 3, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Pointdexter*, 153 S.W.3d at 405–06; *Jackson*, 443 U.S. at 319; *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011)). "Applying the appropriate standards of review, we believe that a reasonable factfinder could determine, beyond a reasonable doubt, that [Davis] participated in the charged offense." *Id.* (citing TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.134; *Jackson*, 443 U.S. at 319; *Lucio*, 351 S.W.3d at 894). Accordingly, we conclude that the evidence is sufficient to support Davis's conviction. As such, we overrule Davis's sole issue on appeal.

## IV. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted: July 1, 2026
Date Decided: July 27, 2026

Do Not Publish

10